The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Good morning. Mr. Kline, be happy to hear from you. Thank you, Your Honors. May it please the Court, my name is David J. Kline, and today I proudly represent Ms. Maria Velasquez and her young son, DAEV, against the United States Attorney General. Your Honors, two years ago, in the country of Honduras, there occurred an event making up part, only part, of what the Board of Immigration Appeals euphemistically calls a personal dispute over who should have custody of DAEV. What happened was that a Mara Salvatrucha gang member, Oscar Ivan Estrada, who was looking for Maria Velasquez, my client, shot and killed Ms. Velasquez's sister. He had intended to kill Ms. Velasquez herself, and the reason for the murder and the attempted murder was because Ms. Velasquez refused to surrender custody of her son, DAEV, to the Mara Salvatrucha gang member's own mother, who herself was associated with Mara Salvatrucha. Although the Board of Immigration Appeals… Is there any evidence… I'm sorry, Your Honor. Is there any evidence in the record, Mr. Kline, that the dispute had anything to do with gang business as opposed to just the daughter and the de facto mother-in-law just couldn't get along? Yes, as a matter of fact, there is, Your Honor. It's one of the wrong facts that the Board of Immigration Appeals found here, and essentially it found, at least impliedly, that Mara Salvatrucha, no gang and no organization, was involved in the persecution. So do we have to find facts contrary to what the immigration judge and the board determined in order for you to prevail? You don't have to, but if you don't mind my saying so, you should. To follow up on that question, isn't the matter of whether something is a custody fight, isn't that a factual matter? If I understand you correctly, Your Honor, you're asking whether or not the nexus was shown between the… What I'm saying is that the context here, the board, or not the board really, but the immigration judge, would be better suited than we are, having heard all the evidence, to judge the overall context and to determine whether this was a custody dispute between a daughter and a mother-in-law or whether it was part of a broader MS-13 effort to target an entire family. I mean, the question of which one of those it was would be factual in nature. Now, the board could have gotten the facts wrong, but isn't Judge Agee's question pertinent here that we would have to overturn a factual finding to get to where you want to go? Your Honor, we have two parts to our argument. One part is that the board and the immigration judge, and actually we're talking about the board's decision here, got the facts wrong. The other part is, even if they, as we believe is not the case, didn't get the facts wrong, Ms. Velasquez and DAEV still win. Now, if I could, if I could go back right now to Judge Agee's question, and, you know, he asked whether or not there was evidence in the record that the gang was involved. And the answer to that, Judge Agee, is that it is involved. The first item, of course, is that a Marichal Vitrucci gang member attempted to kill Ms. Velasquez, but killed Ms. Velasquez's sister instead, and, in fact, was sent there to kill Ms. Velasquez. But is there any evidence he was sent by the gang as opposed to his mother? The mother, the answer in part to that is, yes, there is evidence that the gang sent her because the mother herself was associated with Marichal Vitrucci. All right. Now, what evidence is there? Okay. Well, there is. I mean, other than the fact that the son who shot your client's sister was in the gang, other than that occurrence, what evidence is there that his mission was directed by the gang? Well, that the mother, of course, was associated with the gang, and that's found in the record at approximately page 421. The second fact is that Marichal Vitrucci itself wrote on— Suppose—I mean, suppose the mother was associated with the gang, and suppose—I'm not sure how strong that association is to begin with. And suppose Oscar was a member of the gang. That doesn't mean necessarily that this loses its character as a fight between a daughter and mother-in-law over custody, and that seems to me basically factual. Because it is a fair point that the government makes here that we can really just throw open the floodgates if we get into the situation of taking every custody dispute and making it into an asylum claim or a persecution claim. Because no telling how many family quarrels there are. I mean, we wish, oh, how we wish that families all got along, that everybody showed up at Thanksgiving dinner and, you know, helped to carve the turkey and serve the cranberries and all the rest. But they don't get along. A lot of times they don't get along. But that doesn't transform it into an asylum claim. I understand that, Your Honor. This is a little worse, of course, than not showing up for Thanksgiving dinner. This was actual murder of the sister of Ms. Velazquez, the asylum applicant here. But if I can still, there are further facts in the record, Your Honor, that show a gang nexus here. The second fact is that the Maris of Atrucha wrote on Ms. Velazquez's house that the gang will kill her if she returns. Now, the record says there is written on the house M and there is written on the house S, and we will kill you when you return. I'm not using the precise words here, but that's essentially what it said. The third fact is even the asylum officer who looked at all the facts in the record concluded, and the one who conducted the credible fear interview wrote, quote, the grandmother's family is strongly associated with the MS gang, end quote. So the record does have the information in it that there is a gang nexus here. And, frankly, Your Honor, our view is that the Board of Immigration Appeals and the Attorney General has it wrong. There is not substantial evidence in the record that Maris of Atrucha was not involved. Now, if I can. You're faced with a situation where that's not a finding either the IJ or the Board made. In fact, they made the opposite finding, and you've got a pretty high standard to surmount in order to either reverse that finding or to make other findings in the first instance that they never made. That is true. We have to show that substantial evidence in the record does not support the Board and the IJ's decision. But I submit to you that we have made that showing, that if you scrutinize the record carefully, you will find it there that there is the nexus. And, in fact, the DHS asylum officer, DHS, of course, is the opponent to Ms. Velasquez and DAEV below. The DHS asylum officer. But the standard is that no reasonable fact finder could have found as the Board did. I mean, that's the standard, that no reasonable fact finder could have found the way the Board did. That is correct, Your Honor. And I submit that we have shown, and the record shows, that no reasonable fact finder could find it the way that the immigration judge and the Board did. They simply ignored the evidence in the record. Now, I will hasten to add, too, and I think I need to here, that the grandmother, the person who coordinated the persecution, is not even of the same family as Ms. Velasquez. She's not related by blood. She's not related by marriage. She simply is an outside third party. Why wouldn't one of the pieces of the substantial evidence be that the controversy here revolves around only one of Petitioner's five children, not the entire family? They weren't after the whole family. The whole crux of the dispute seems to revolve around this one individual, not the larger family. Your Honor, I beg to differ with you, of course. What you're looking for here is the nuclear family. And Hernandez-Avalos, the particular social group, is the nuclear family. The nuclear family in this context where the persecutor is the mother of the husband who was killed, the nuclear family is, all that's left of it anyway, is Ms. Velasquez and DAEV. That is the whole and the entire nuclear family. You don't have to look at the rest of the, we'll call it Ms. Velasquez's family, because there is no connection between them and Ms. Velasquez's dead husband. It wasn't her husband. Why don't we just assume for our argument that you lose on what I'll call the factual issue, that we conclude that a reasonable fact finder could have concluded, as the IJ and the Board did, you indicated that even in that circumstance, you should prevail in this case. Why don't you tell us what your argument is there? Sure, I shall. I mean, Your Honors, the question that this Court says must be asked in a case like this one is why Ms. Velasquez and not another person was threatened with death if she did not relinquish her son's custody to the grandmother. And that's Hernandez-Avalos, Viatoro versus Sessions, Cantillo-Cruz versus Sessions. Now, the answer to that is, of course, Ms. Velasquez's relationship to her son is why she was persecuted and will be persecuted if she is returned to Honduras. Thus, we submit, just based on that, although I have more arguments to make, that she has a well-founded fear of persecution and she is eligible for withholding. Now, when the Attorney General wrote that essentially family member-on-family member persecution can never qualify a noncitizen for asylum and withholding, I looked through the Immigration and Nationality Act to find out where it says that. And guess what? I couldn't find it. I couldn't find it because it's not there. So I looked at the BIA decisions, and I said, well, there must be something in the BIA decisions. So I looked through them, and I found a matter of ARCG, a published board decision, which says that a husband can persecute a wife. In other words, a person in a nuclear family, even if we are to assume, which I do not, Your Honor, that they are in the same nuclear family and that Maris Avatrucha is not involved, a person within the nuclear family can persecute another person within the nuclear family. But the prohibited ground to which you invoke is membership in a particular social group. And the only social group here is that there's a targeting of this family as a family. And I don't understand why, because we're not quarreling here with the legal standard. We all agree as to what the prohibited ground would be. We all agree as to the wording of it. We all agree that to qualify, there has to be a targeting of the family. And the factual question as to whether this was a – but the question of whether this was a targeting of a family or a personal custody dispute, I don't understand why that isn't factual in nature and why the overall legal standard isn't clear and why the question doesn't boil down simply to an application of a well-recognized, legal standard to a particular set of facts. Your Honor, I see my time has expired. May I try to answer that question? Absolutely. Okay. There are a number of parts, obviously, to that question. The particular social group in this particular case is the nuclear family. So it's not the bigger family. It is the nuclear family here. And, by the way, the grandmother, of course, is a member of neither. Okay. The standard of review, the standard of review, there is, of course, the facts that one must determine. But then there's the application of the law, whether the nexus is satisfied. Would you mind exploring that on rebuttal? Because you've reserved some time. Yes, of course, Your Honor. Thank you. All right. Thank you. Mr. Mack. Good morning, and may it please the Court. Greg Mack, counsel for the respondent at the Attorney General of the United States. Motive is critical in the asylum context, and I think page 154 of the record tells the Court about what the motive is here. At page 154 of the record, it reveals that Petitioner testified that her mother-in-law wants her son because Petitioner is always working. Page 154 and other record evidence demonstrate that what happened to Petitioner here was a personal dispute which cannot support an asylum claim. Retribution over personal matters lies outside the scope of the asylum statute, and four corners of this dispute do not extend beyond Petitioner, her minor son, the grandmother, and the grandmother's son who unfortunately shot and killed Petitioner's sister. But again, that was a case of mistaken identity. Petitioner, excuse me, the grandmother's son was after Petitioner herself, not after any other. The key words here are on account of. Correct, Your Honor. In the statute. Those three words, on account of. And whether something is on account of this basis or that basis, that has to be basically a factual question, doesn't it? We agree with the Court. That's a factual question covered by the substantial evidence test, Your Honor. And to reverse the Board's decision, as the Court well knows, the record has to compel a contrary conclusion. As the Court said, no reasonable person could find against or find in favor of Petitioner, or excuse me, could find against the government here. That's not the case here because the record doesn't support the claim that the gangs are involved here. Now, there certainly are references to gangs, and certainly MS wrote on her home, but the MS, those words were written after she was already in the United States. And it's just incidental and tangential that the grandmother's son was a member of the MS gang. Now, there's been reference to page 421 of the record with respect to saying that the grandmother is strongly associated with the gang. That is the asylum officer's summary of Petitioner's statement to the asylum officer. That is not a finding of fact by the asylum officer. And as the government put in our brief in a footnote, the asylum officer is at the very beginning of the process. It goes from the asylum officer. If the asylum officer finds a credible fear, then it goes to a de novo proceeding before the IJ. So that asylum officer's statement is just a summary of her statement to the asylum officer. It's not a finding of fact. The findings of fact are by the IJ and by the court. I'm not sure what her position is on this family business because at the trial level she said that they were her family. Right. And now she said they're not. So it's something of a moving target. And that's not unusual, Your Honor, in the immigration context. It morphs, if you will, from the asylum officer to the IJ to the board and even to the court of appeals here. It's hard to pin down these things when the argument keeps moving around on you. And that's Petitioner's burden first before the IJ and then the board and then this court. What she said to the IJ is different, I would submit, than what she's telling the court today. Before the IJ and the board, it was about the family. The family is after her, wants her son. As we move up the chain, we get to this gang indication, and as I pointed out in the government's brief. But that kind of appeared late in the day. Correct. And if you look at Petitioner's appeal to the board, which is what this court is reviewing, the board's decision, how she pitched it to the board was there's a complete absence of reference to the gangs as a motive against her. Before the board, it was an intra-family dispute. Correct. And then we get up here. That's right. And it becomes something different. And suddenly the gang takes on a prominence. This is very disconcerting because it happens that the arguments just shift back and forth, sort of more so in this field than in many others. And I think that's possible to be because asylum applicants don't have counsel in the beginning, and as counsel gets involved and develops their arguments in relation to what the law actually is on social group analysis, that social group claim morphs as the person moves up the chain. But as I was pointing out, this case, I think the case would sound strange to the IJ and the board here because we have counsel for Petitioner talking about MS-13 and the gangs. You get before the board, and if you look at pages 9 through 30 of the record, the appeal brief to the board says nothing about gangs except to the extent to say that the police are corrupt because the gangs are heavily involved. It doesn't say that gangs are a motive. It's always interesting from the perspective of a trial judge to follow a case up on appeal. And sometimes you don't recognize it, and you think to yourself, whoa, that's not what this case was about. This isn't a case that came before me. And that's why I say I think the IJ and the board would be surprised that this is now a gang case when before the IJ and the board, as Petitioner put it, this was a family case. It was completely pitched as a case involving the family and Petitioner's grandmother wanting her son, nothing else. Certainly there's references to MS. Certainly the asylum officer summarized her statement with respect to strongly associated with MS. And there's writing on the wall by MS. But as we pointed out in our brief, those are incidental and tangential to the larger motive that was pitched to the board. And, again, I would urge you to look at pages 9 through 30 of the appeal brief to the board. It's how Petitioner is setting the case up to the board so the board can analyze it. And through 9 through 30 of the appeal brief, this is not a gang case according to that appeal brief. You know, sometimes, I mean, sometimes in these immigration cases you get some actually very sad human situations. And this one, you know, this one is sad, really, that there's a dispute over this child. And although there are custody disputes here in the United States that are very nasty as well. But it's still a sad circumstance. But, you know, you just. Sad is not a protected class. That's right. I mean, Congress wrote the statute in a particular way. And you just can't open it up because, you know, as my colleague pointed out at the very beginning of the argument, you have all sorts of situations within families where people don't get along. In fact, those kinds of disputes raise emotions to a level that sometimes disputes outside the family don't reach. But it just. Well, that's why I say, Your Honor, sad is not what Congress put in the statute. Sadness is in a protected class. I've been doing this, frankly, since 1999. There's lots of tragic, sad cases where the courts apply the applicable standard of review and say, this case, you can't be reversed because the record doesn't compel a contrary conclusion. And that's why we cited at page 45 of our brief, this court's decision in Saldarriaga v. Gonzales, which essentially says what the court says. There are sad, tragic cases in other countries, but the asylum statute doesn't let you come into the door of the United States because you have a sad case. And like I said, the immigration judge in the board looked, I think, at a different case than the one that's now being pitched to the court. And that's why we also put in our brief, the petitioners try to show the court some evidence with respect to gangs are interested in juveniles. Again, that was not pitched to the Board of Immigration Appeals. And as we pointed in our brief, that can't be presented to this court because that hasn't been exhausted. And the statute also bars those sorts of new claims. Do you have anything further? No, Your Honor. We would ask the court what? I wanted you to distinguish, if you would, our case, Hernandez, that Judge Shedd wrote. I know you're familiar with it. Yes. It has some right broad language in it. I just would ask that you distinguish it again for me, please. I think, Your Honor, and this is in our brief, I think since the court's decision on Cordova and then on through Hernandez-Avalos and as well as our 28-J letter with respect to Cantillano, this court has taken the board to task over its social group analysis and saying you're missing the boat on what the actual motive is. And in Hernandez-Avalos, the court said you've made a distinction that doesn't have a real difference here because you didn't really focus on the motive that was targeting the mother there. But in all those cases, Cordova on through, those involved external third parties. And as the board in this case distinguished Hernandez-Avalos, this case doesn't involve an external third party. It's an intra-family dispute over the custody of a minor child. And we ask the court to deny the petition for review. If there's no further questions. Hold on a second. Do you have any further questions? All right. Thank you. Thank you, Your Honor. Mr. Kline, we'd be happy to hear from you in rebuttal. Thank you, Your Honor. I have a number of things I would like to say. If possible, I would like to deal with the standard of review. The question in this case is whether a nexus has been shown. Now, the court's obligation is to apply the law to the facts. Whether a nexus has been shown is a mixed question of law and fact. And because it's a mixed question of law and fact, it's reviewed de novo. Which nexus in particular are you talking about now? The nexus between the persecution and the social group in this particular case. I would like to talk a little bit about how the cases are different or whether the case became different. Your Honor, as we read the case, Hernandez-Avalos, it doesn't say you can't get asylum unless there is a group or an organization, which is what the board said here. It says, essentially, if you're persecuted because you're the mother, then you're eligible for asylum. Did you have findings, though, in that case that was gang-directed activity? I mean, isn't that a distinguishing factor between this case and that one? Possibly, Your Honor. But my point that I wanted to make was that nobody had put in gang or organization. Nobody thought that it was, in this case, gang or organization until the Board of Immigration Appeals said so. And look carefully, please, at what the Attorney General is arguing here. Because the board says you're not qualified unless there's a gang or an organization involved. The Attorney General simply says it's a third party is all that's required. In that case, there was evidence that the gang had actually tried to recruit this child. In Hernandez, yes, there was gang involvement there. I didn't see that level of gang involvement here. Because they actually tried to recruit the young child into the gang. It's always very difficult, Your Honor, to try to disagree with a judge. But, you know, we have here, Your Honor, an actual murder that occurred. The murder that was done by a gang member, there's no real dispute that that's the case. Directed by the mother who was part of the gang. You have MS that writes on the house that it's going to kill her. I respectfully submit to you that the evidence, and you have a dead body here, too. And you have proof of the dead body. The evidence is compelling here that you have gang involvement and that a gang was involved. But I don't think that we need to. I don't think that we need to get into proof or that you need to reverse on the gang involvement. And I really don't, Your Honor, because it's not in the INA. And moreover, even the Board of Immigration Appeals says an intra-family dispute between a husband and a wife, and I think I can call it a dispute because the Board does, the persecution by a husband of a wife is enough to get you asylum. If the Board of Immigration Appeals says that, even if this were, and I don't admit that it is, even if this were an intra-family dispute, my clients are entitled to asylum and withholding of removal. Unless there are further questions, I will yield my one minute and seven seconds. Thank you very much, Your Honors. Thank you. We appreciate both of your arguments. We'll come down in Greek Council and then we'll move into our next case.
judges: J. Harvie Wilkinson III, William B. Traxler, Jr., G. Steven Agee